Our next case is Royal Brush Manufacturing v. United States & Dixon, Ticonderoga, 2022-12-26. Mr. Gordon. Do you want to first tell us why we shouldn't grant the government's motion to dismiss? Yes, Your Honor. I'd be happy to start with that. The agency suggests that its own unlawful liquidation of the entries at issue precludes the court from now being able to grant any effectual relief to Royal Brush. That's not so, and there are several reasons for that. The first is that reliquidation is indeed possible. The Zenith Rule, which precludes reliquidation, has been limited by this court to actions under Section 1516A, while this action is under Section 1517. Second, even in actions under Section 1516A, the court has said there is an exception where the liquidation violates a court restraining order saying that there shouldn't be a liquidation. And here you have a congressional command in the statute that there shall be no liquidation during the pendency of an Enforce and Protect Act proceeding. So Congress is entitled to no less deference in its orders than the court is, we'd submit. But isn't the key question here that 517 specifically provides for judicial review of these decisions by customs without regard to the issue of liquidation? I agree with that too, Your Honor. Would you say then, even though Section 514, which is what Zenith is based on, has certain statutory exceptions to it, why doesn't it, I guess my answer is, if there's an exception under 517E1, why isn't that listed under Section 514? I think it's a completely, I'm not sure that I follow the court with that question, Your Honor. The EAPA proceeding, it seems to me, is a completely distinct proceeding that's limited to a very specific question, was there evasion? The other provisions deal more generally with establishing applicable duties that are owed. Here, there's no dispute about what duties are owed, the only question is, was there evasion? Which is a completely distinct issue, and Congress has said there shall be judicial review of it, and moreover has said there shall be no liquidation while the agency proceeding is pending. Here, the agency violates its own obligations and then says, oh, well, gee, as a result, Royal Brush is out of luck, and the court's out of luck, because there's nothing the court can do about it. We don't think that that argument makes common sense, and we don't think it's congruent with the law. If there are any questions on that issue, I'm happy to address them, otherwise I'll turn to the issues that we see with the agency's decision. Please proceed. Our claims in this case are fundamentally constitutional in nature, based on due process. As a matter of due process, the agency cannot impose liability on Royal Brush without disclosing to Royal Brush all of the evidence on which it relied. Yet the agency did exactly that here, and says it's entitled to do so, because of its own regulations. Sure looks like there was evasion of the anti-dumping order, and evidence that the Philippine company didn't have the capacity to produce all that was imported, and the products found were labeled from China. Well, Your Honor, the whole point of due process is that Royal Brush never had an opportunity to address that evidence, particularly the evidence about what the capacity of the Philippine manufacturer was. All that Royal Brush was told, all that the administrative record disclosed, was that as a result of the verification proceeding, that the agency had determined that the manufacturer lacked the capacity to produce all the pencils that had shipped to the U.S. during that period. And in fact, what the evidence actually showed, which was not available to Royal Brush, was that according to the agency's own calculations, which were an extrapolation from Royal Brush's seven orders, which were less than one percent of the production capacity that the agency itself said the manufacturer had, they said that the manufacturer could have produced two out of every three pencils that were shipped to the U.S. in 2018. So, yet the agency found that all of the pencils that Royal Brush imported were among this one-third that it said the manufacturer couldn't have produced. Royal Brush had no opportunity whatsoever to address any of that because it didn't know the data. The data was not, the evidence was not disclosed to Royal Brush. That is a fundamental violation of due process. There was a second... They bracketed all the numbers. They bracketed all the numbers and just wrote the word number in it, right? That's correct, Your Honor. You know, as a result of number plus number, we find the manufacturer couldn't have produced many of the pencils that it shipped to the U.S., and there was no opportunity to respond. That is, you know, that's the equivalent of saying, well, the witness came in and said that you did A, B, and C, and therefore we conclude that you're liable without any chance to probe exactly what the witness said and exactly what the weaknesses were in that. Moreover, there was a second violation of due process, which was that all of this came up the verification report, which is at the tail end of the process. That was new factual information. These calculations, this finding about overall production capacity. Overall production capacity had not been an issue throughout the proceeding. The agency had focused exclusively on whether the manufacturer had the capacity to produce the pencils in Royal Brush's orders, which were seven, and which were a small order. You're talking not huge quantities of pencils. That was the focus. That was the announced purpose of the verification, and during verification, that was what the agency asked the manufacturer to produce, which was the records relating to those specific orders. The agency concluded, the verification team concluded, that they weren't happy with the manufacturer's records, and therefore they decided on their own to shift gears and calculate, do an extrapolation from the information they did have of what the manufacturer's overall capacity was, and then they treated that as the findings of trained auditors, which carried the weight of evidence. That is exactly what the agency said, but they didn't give Royal Brush the they didn't tell them what the information was, and they didn't give Royal Brush the opportunity to respond. Initially, the agency said, this is new factual information. We'll accept a response from you, but then they changed their mind after Royal Brush submitted its response and said, no, we've concluded that it's not new factual information, and therefore we will not consider your submission. It's hard to imagine two more fundamental violations of due process. Now, beyond that, there are other flaws in the approach that the agency took to reaching its determination here. Number one, it improperly shifted the burden of proof to Royal Brush. The statute requires the agency to establish the statutory condition of evasion. That burden is on the agency. Yet what the agency did was to shift the burden and say, well, neither Royal Brush nor the manufacturer have proven to our satisfaction that the pencils were manufactured in the Philippines. That's a reversal of the burden of proof. Second, the agency applied the wrong standard of proof. The agency said, we're going to simply rely on substantial evidence. Well, this court decided several years ago in Rodriguez that substantial evidence is the wrong standard of proof for the agency. It is the standard of review that this court applies, but that preponderance of the evidence is the applicable standard in virtually all agency proceedings. The agency did not apply preponderance here. And to go back to your point, Judge Lurie, about the evidence and the quality evidence, we could have made the argument, for example, that according to your evidence agency, the manufacturer couldn't have produced one-third of the pencils that shipped to the U.S. in 2018. So that creates the possibility that in any given shipment that there were Chinese pencils. But it doesn't create the probability that in any given shipment there were pencils. And it certainly doesn't create the probability that the entirety of all the pencils that Royal Brush submitted happened to be made in China rather than in the Philippines. These are important arguments, and the outcome of them turns significantly on the burden of proof and the standard of proof, which were misapplied by the agency. So we submit that this case raises very important and very fundamental questions. It may just be about pencils, but the issues go far beyond that. Thank you. We must save your rebuttal time. Ms. Jansen. Good morning, Your Honors, and may it please the Court. This Court should dismiss this appeal for lack of jurisdiction because all of these entries were liquidated and Royal Brush failed to protest. You agree, don't you, that 515.17 specifically provides judicial review of an evasion determination, right? I do, Your Honor. So they come under 517, and they have a right to judicial review. They do, but it doesn't say anything about excluding the protest requirements of 1514, which They don't, unlike the 1516, this provides a specific alternative right to review, which doesn't require a protest, right? It does require, it does allow for a specific right to review, but it doesn't necessarily get Royal Brush out from under the protest requirements because what is under review? Where does 515.17 say there has to be a protest? It is not contained in that statute, but in order for this Court to have, in order for there to be standing for Royal Brush to bring this case, because the evasion determination only covers certain entries, and in here there were five entries that the evasion investigation covered, those cannot be liquidated, or they have to have been protested in order for Royal Brush to preserve its right to maintain the suspension of those liquidations. And this Court has addressed those requirements repeatedly. Not under 1517. 1517 is a new statute. We don't have any cases on that. That is correct. But what this Court has So there are no cases suggesting that you have to have a protest to come under 1517, and there's no language in the statute that says that either. That is correct. But other cases applying the 1514 protest requirements apply with more force here to this specific case and this set of facts, because what Royal Brush is challenging is not a decision or the action of Commerce, but specifically a decision and action by CBP to erroneously liquidate these entries. Did you make this argument in the CIT? No, because we were not aware until the conclusion of that proceeding that these entries had been liquidated. Do you want to address due process? Yes, Your Honor. You seem to say they have no right to the evidence because our regulations don't give you give them a right to the evidence. I would have thought that under Ohio Bail and a long line of Supreme Court cases, if you're going to impose a monetary penalty on somebody, you have to give them the evidence that supports the finding. Why is that wrong? Well, this Court has addressed specifically in foreign trade cases under PSC Avizma what level of due process is required, and it's simply a notice and a meaningful opportunity to be heard. Well, how can you have a meaningful opportunity to be heard if you don't have access to the evidence? Well, they do have access to the public summaries of the evidence. Yeah, but you blanked out all the numbers. How can that be sufficient? You blanked out all the numbers, and you say, well, our regulations don't give you the numbers, so you don't have a right to the numbers. How could they defend themselves without the numbers? Well, it's not that the regulations alone give us a right that allows us to comply with due process. It's that the disclosure of confidential business information is not something that the government is allowed to do unless they have authority to do that and they don't hear. You mean because the statute doesn't provide for protective orders, you can't use a protective order mechanism to protect the information? There is no statutory authority for CBP to do that, which is different than the statutory authority giving commerce the right to promulgate an APO system. That isn't to say that a court couldn't introduce administrative protective order, but that power has not been granted to CBP here. You have no authority to impose a protective order in these circumstances? The statutory, there is no statutory authority to do that. No, but you didn't answer my question. Are you saying that the agency lacked the authority to impose a protective order on this pavement? Well, the CBP faces concern with respect to disclosing... No, but you're not answering my question. Are you saying that the agency, Customs, does not have the authority to impose a protective order to protect this information? If Customs did that, they would be filling in a gap in the statute that isn't explicitly provided for. And so, do they have that authority or don't they? They would be at risk of stepping outside of their statutory mandate, and that's why they promulgated this regulation, to fill in that gap and to provide... Filling in the gap is saying you don't get the information. It's not, though. Filling in the gap is saying you get a summary of the information. You don't get the... Come on. They blanked out... You blanked out the numbers. That's not giving them the information. How can you get anything out of a statement, bracket, number bracket, when the numbers are not there? How can that possibly give you the necessary information? Well, I think that's a good question that Royal Brush was asked below and had the opportunity to, when they did have an APO in this case, to tell the Court of International Trade just how they were prejudiced by the lack of information. And yet they couldn't show that this outcome would have been any different or that they... Our decision in Stone, are you familiar with that? It says that where there's a due process violation, you don't look to the question of prejudice. Well, in Stone, the case from 1999, which relied in part on ex parte communication that was given to a deciding official... was dismissed on the ground of lack of prejudice. But the employee there that was attempting to make the due process argument needed to show substantial and likely to cause prejudice to the level of a reversible error. So it wasn't simply that they were denied certain evidence. It was that they had to make an additional showing of how that... Does not the case say that if there's a due process violation, it can't be undone by a theory of lack of prejudice? But in making the due... It does say that, right? If there's a due process violation, yes. But in order to establish a due process violation, there has to be more than simply a showing that some evidence was excluded or wasn't... The numbers. Pardon me? The numbers. All the numbers. And yet, Royal Brush has not shown how those numbers prejudiced it to the extent that it reached a due process violation. And in fact, the determination that resulted here didn't even require the production capacity numbers and the extrapolation that Royal Brush was relying on in its argument. What happened... Customs relied on the numbers, right? Customs relied on a number of things because the facts here were overwhelming. But primarily, there were invoices that Royal Brush put on the record of... They relied on the numbers that you blanked out, right? Customs did not need to rely on extrapolated numbers. Whether they needed to or not, they did rely on the numbers that were blanked out, right? But substantial evidence... Yes or no. They used those numbers, yes. And it was included in the verification report. And what about the provision permitting summaries? Did that obviate the need to produce the exact data? That is... That complied with the notice requirement that CBP has promulgated this regulation in order to comply with due process requirements because it cannot disclose all of the business confidential information. Just so I understand, the summary that was provided that we're talking about is the word number, right? In certain cases, yes. And in some cases, it's things like picture of a box, right? Right, with the description of the type of language on the box. Yes. But what was available to... Any case in administrative law where withholding the evidence that the agency relied on to reach the result is consistent with due process? Nothing from this court, Your Honor. Or any other court, right? Not that I'm aware of. But a different standard of due process applies to these administrative proceedings. And I don't know... Administrative proceedings? Or are you saying all administrative... A different standard applies to all administrative proceedings? Well, to this administrative proceeding involving foreign trade. And I'm... What is your legal basis for that? Well, the PSC Avizuma case, which specifically considered a due process argument in the context of a ADCVD administrative review. But there are also... I'm not aware of any cases where confidential business information... The withholding of confidential business information rose to the level of a due process violation either. So this is just simply a new area that hasn't been explored. Again, this is why CBP promulgated the regulations it did in order to come within the trade secrets law and not erroneously disclose information that it wasn't allowed to disclose while putting... Can I ask you something? That the erroneous concern about the trade secret law intrigued me because, of course, at this point now, that information has been provided. Why was there a concern about a trade secret violation before and now it's open? Well, because the trade secret violation would be triggered if CBP disclosed this information without authority of law. But once there was... You mean without a protective order. That's right. But once the Court of International Trade issued a protective order, then it was insulated from that liability because it was allowed to do this subject to authority, legal authorization. So under the statute, if there's a protective order, there's no problem with the Trade Secrets Act? Well, it would be authorized by law, and that's the language. The answer is yes, there's not a problem with the Trade Secrets Act if there's a protective order. That is correct. But again, just to understand, the reason why you're saying that the CBP cannot have a protective order is because it doesn't have... There's no express statutory authority for it to have protective orders. Right. In the commerce arena, it's been given statutory authority to do that. CBP has not been given that authority here. Earlier iterations of this legislation included statutory authority for an administrative protective order, but it did not make it into the final statute. I can't think... I'm having a hard time understanding why statutory authority to have a protective order would be required. Well, it's to authorize CBP to disclose information that parties have deemed to be confidential in business information. And as long as they are authorized to do that under a statute, then they cannot be liable elsewhere in the law for disclosing other parties' information. Even under a protective order. I mean, I'm trying to understand why the protective order wouldn't satisfy... Let's say they decide, we're going to have a protective order scheme like we do, or like is performed in the anti-dumping cases, for example. We're going to implement something like that. Why would that raise trade secret concerns if it's properly implemented? And so it would be a regulation then, which would be obviously subject to the statutory, I guess, reach that Congress has given CBP. And so that opens up a question of whether or not CBP has the authority to implement such a regulation, because it is not specifically provided for in the statute. And like I said, earlier iterations of this legislation did provide for that in statute. It was taken out, which allows us to assume that when Congress speaks and when it omits things from what it says, we take that seriously, and it intended to not allow an APO as a matter of statutory authority. Is there any indication in the legislative history that it was left out to deny you the authority to have protective order? An earlier draft of the legislation that was introduced in the House included it. It just did not. That did not. So there's no indication in the legislative history that Congress thought protective orders were a bad idea, right? No, just the absence of Congress speaking on this issue, where they have spoken elsewhere on this issue. Counsel, your time has expired. Let's hear from Dickson, by Condorogo. Thank you. Ms. Knowles, is it? Yes. Good morning. May it please the Court. Felicia Knowles on behalf of Appellee Dickson, Ticonderoga Company. This Court should affirm the CIT's decision for three reasons. First, Royal Brush did receive due process. Second, CBP complied with its EPA regulations. And third, most importantly, Royal Brush has failed to show reversible error. Not only is the standard of review here highly deferential to the CIT and CBP. On a constitutional question? The standard of review is deferential on a constitutional question? What basis does that? Your Honor, this is not a constitutional question. Due process is a constitutional question, isn't it? Your Honor, due process is a constitutional question. Do we defer to the agency on constitutional questions? You defer to the agency? Yes or no. Do we defer to agencies on constitutional questions? No, Your Honor, not on constitutional questions. But as it relates, as argued here by Royal Brush, Royal Brush had the obligation to set forth its arguments in accordance with the Supreme Court's due process standards in Matthews. And it failed to do so. I mean, they cited a Supreme Court case. They cited Ohio Bell, which seems to be pretty much directly in point. No, Your Honor, I respectfully disagree. Ohio Bell is not relevant here because first, it is not an EPA statute. Second, it relates to facts that do not include... We dismiss Supreme Court authority because it's under a different statute that presents the same issues? Yes, Your Honor. In addition, and more importantly, what is different is that in these EPA proceedings, the EPA regulations specifically provide that public summaries, as we were just discussing before, be provided in order to give a reasonable understanding of the substance of the information. And that was not provided in Ohio Bell. So here, Customs followed the regulations that it had available to it to conduct this proceeding. But more importantly, the reason that Royal Brush has failed to show reversible error is because it is focusing on these two questions, one, on the public summaries, and two, on the inability to submit rebuttal information. But our brief details first, why those due process arguments fail. But even assuming this court agrees with those arguments, it doesn't amount to reversible error because the mountain of evidence that we have over the course of this proceeding shows substantial evidence of evasion. First, Royal Brush's own— What is your basis for saying that we can set aside a due process violation because there is substantial evidence supporting the ultimate determination? Your Honor, the due process review is set forth in Matthews, and Royal Brush failed to address any of those Matthews standards. I don't feel like you're answering my question. Then I apologize. I don't understand the question. My question is, I don't know of any case law that says where there's a due process violation. It doesn't matter at all that there's a due process constitutional violation. And instead, I can just ignore it because I think the result is right at the end of the proceeding. If I understand the question correctly, this court has to review whether there is reversible error. And the due process argument, even if the due process argument, you rule in Royal Brush's favor, it still doesn't amount to reversible error. Why not? I mean, it's my understanding of the law that when there's a due process violation, I can't just say, oh, it's harmless. It doesn't matter because I don't see— there's no prejudice to them because they would have lost anyway. So I'm asking you for any cases that you may know of that show that my understanding of the law is incorrect. No, Your Honor. I don't have any cases that come to mind at the moment. But per our brief, again, we do not believe that they were not afforded due process. They were afforded due process. And even with any failure with respect to these arguments, again, the facts on the record overwhelmingly support evasion that Royal Brush was unable to address, failed to address, or the Court of International Trade said was not— did not overcome the evidence in the evasion proceedings. Thank you, counsel. The time has expired. Mr. Gordon has some rebuttal time. I'd like to make one point, and that is that the statute, the EAPA, does not address confidential business information, period. It does not say that commerce has to make a provision not to include confidential business information in public summaries. Yet commerce, notwithstanding the statutory silence, said, well, we have authority to create this provision because we want to see the confidential business information. So we'll promise people that we won't publicly disclose it. They put that in the regulation. What they didn't put in the regulation was the concomitant provision to share it with Royal Brush or any other respondent. So when the government stands here and talks about how its hands are tied, I say that's just not true. The problem here, the lack of due process here, is a problem of the agency's own creation because its regulations do not afford due process. Now, in terms of the response to the verification report, its regulation does say on its face that you're entitled to respond to new factual information. They simply misapplied their own regulation in contravention of what this court has said and in contravention of any reasonable interpretation. Those, I think, are the main points. Unless there are any questions from the court, I'll submit. Thank you, Mr. Gordon. The case is submitted.